Mr. Taylor, may it please the Court, in the trial court below, the defendant, Whole Foods, raised five different grounds for dismissal, but only one of those was addressed by the District Court. It was the issue of federal preemption, and it's the only basis that need be addressed by the Court here. Specifically, Whole Foods argued that the claims in this case were impliedly preempted under the principles of Buckman because the complaint alleged violations of the Nutrition, Labeling, and Education Act, NLEA. To the contrary, Whole Foods misstates, misconstrues the holding of Buckman and fails to consider the other holdings of the Supreme Court, and especially this court in Hughes v. Boston Scientific. Ordinarily, preemption is a very complex issue, one of the more complex issues in federal law. In this case, it's the relevant principles over a decade ago in Hughes, even if the NLEA could allow implied preemption, which we dispute. Therefore, Hughes would be controlling on this, and it's directly contrary to Whole Foods' argument. Whole Foods takes Buckman, which was a fraud on the FDA case, a case in which the allegations involved misstatements to the FDA and an assertion that the FDA would have done something different if that plaintiff or that defendant had made the correct allegations. In Buckman, the court held that this was preempted under conflict preemption principles because the claims of the FDA, fraud on the FDA claim, did not involve any state laws at all. It was solely a creature of federal law, and any ruling on it would have essentially usurped the FDA's authority to approve Beckman Advising. However, even Buckman itself contrasted that with cases that were based on state law duties, okay, the Silkwood case from Medtronic versus Moore, that's L-O-H-R for the court reporter, Medtronic versus Moore, et cetera. But any questions? Are there any state law tort claims preempted by the FDA, FDCA? The FDCA would preempt any claim. The FDCA is broad. It includes Medical Devices Act and the NLEA, so they're slightly different. But in the NLEA, for instance, it includes an express preemption provision in 21 U.S.C. section 343, and in 343-1, it says that claims are preempted to the extent that they violate the, or to the extent that the manufacturer complies with the FDA. In other words, if a manufacturer of Whole Foods had a label that accurately met the requirements of federal law, then the state law would not, in most cases, be able to come along and say, you violated state law even though you're complying with federal law. There may be exceptions to that, but it's not relevant to us because our allegations are that you violated state law and violated the federal law. What is your best case with regard to your type of claim, a consumer purchaser of a food item? The best case that it is not preempted. In terms of a food item, no, I'm not sure there are a number of them around the country. We did not delve into, the briefing did not delve into district court case, but I believe this is controlled by Hughes. Principles are controlling. Examples around the country, off the top of my head, would be the Jones v. WTM case, which the court ultimately, trying to remember, that was Tennessee case, which the case, the court said it couldn't determine whether it was preempted and let the case go forward. There's a case, 2nd Circuit, New York, Alcer, A-U-S-E-R, I think is the name of it. But honestly, I'm having trouble remembering the district cases because that was not the basis of the arguments to this court. If the court would like a list of those cases, I'd certainly be happy to provide a supplemental brief. Let me ask you one more question, since I've interrupted your argument, before I let you get back on track. It's not pertinent to this appeal, but it is evident in the briefing that there's an issue over who the initial purchaser of this cupcake was in this case. Can you clarify that for us? I can't provide an original clarification. I was not involved in this case below and don't have personal knowledge of the facts. I'll tell you, as I read the complaints, it's pretty clear that the purchaser of this was the mother of the child that had the party. It shows up on pages 69, 70 of the record, in paragraphs 45 and 46, and paragraphs 42 and 53, I believe. It says that the purchaser was purchasing for the party for their child. It says that person also had severe allergies and that they followed the same process as Ms. Spano in relying on the representations of Whole Foods. I just asked because of the way the case is played at the outset. I think the reason for this, as I read it, the significance of Ms. Spano's reliance is that, it sets the framework for how people rely on Whole Foods, both her and the other child's mother, as well as the fact that Ms. Spano was at this party. She personally took the things, took them out of the packet, and gave them to her. Okay, let's get back to your argument on Gramsci. So back to that, I think Hughes is controlling on this to the extent it applies. We have alleged state law claims. We go into the opening brief, go into the sources of the state law, including, for instance, strict liability. Back in 1974, the Texas Supreme Court adopted section 402A of the restatement. Comment J to that says that a product is unreasonably dangerous due to an allergen if a person will not expect the allergen in there. That's just one example where there was a pre-existing duty to warn of allergens even before. We also describe negligence, deceptive practice, etc. All of these are state court duties. Beyond that, however, there are allegations in the complaint that aren't even part of NLE at all, that aren't even covered by the NLEA, such as representations of these products were vegan, that they set up a separate section of the store to sell their vegan products. They put vegan on the label, and there are allegations in there that, based on that, Ms. Spano, as well as the other lady, believed that these would not have the Those are not part of the NLEA. There are no provisions in the NLEA regarding describing vegan, non-vegan. It's only requiring a listing of allergens. So, these are completely separate. Even if we took all the allergen allegations out of it, you'd still have claims under state law separated apart from the federal claims. Three, as I would explain in the brief, we don't think NLEA that implied preemption can apply at all. Under 341-1 in the note to that statute, which references section 6c 1 and 2 of the NLEA, it has two anti-preemption provisions. One saying there's no preemption unless the manufacturer complies with the statutes for all intents and purposes. Section C2, the safe harbor provision for health and safety, and we cite cases like Great Dane, I think was the name of it, under Texas law and New York law as well, that says statutes such as negligence, strict liability, are regulation of health and safety. So, aside from Hughes, which would be controlling if Buckman applies at all, I don't think the NLEA allows for implied preemption. They cite the Sortano case. I can't spell it for the court I'm sorry. The Sortano case is saying that only applies to field preemption, which is not the case. If you read Sortano or read the entire thing, it makes clear, I think, that there is no implied preemption created by a violation of the NLEA, but have to be based on some other aspect of the federal law. And so, I think Hughes is controlling. I think even if it wasn't the NLEA itself, there's no implied preemption. Beyond that, there's nothing else the court needs to address. The other four grounds are not grounds that could have ever led to a final judgment in this case. They're grounds that are best left to the trial court upon demand. For instance, there's a limitation issue. Everyone agrees it would not result in a dismissal of this case. It would only, even if defendants were correct, it would only dismiss a small portion of the claims by the parents themselves, as opposed to the claims of the child, because under Texas law, limitations don't run until the child reaches maturity. So, this case would go forward regardless, as long as the claims aren't preempted. Therefore, even if the court had ruled against the plaintiff on limitations, it wouldn't have had a final judgment. It wouldn't have resolved all claims as to all parties. That would be simply an interlocutory dismissal. There's no reason for the court to take this up now, particularly given the flux in the law among the various courts of appeals in the state of Texas, and the absence of any binding authority from the Texas Supreme Court, as well as, as far as I can tell, no binding decisions yet on the emergency orders from this court. I think to this point, the court has only issued unpublished opinions that are persuasive, but not binding. If the district court has not yet made a ruling. In fact, it's questionable as to whether the court could issue a ruling on this, although a court can rule on any grounds that would support the judgment. In this case, their limitations argument wouldn't support the judgment. It would be a modification of the judgment. There was no cross appeal, etc. And more importantly, it's just something the court should not get into. It's quite possible that the Supreme Court looks at all the emergency orders and makes an entirely different decision as the Texas Court of Appeals are all over the place. For instance, they argued that you could reform this because there wasn't a motion before the preemption dismissal regarding extension of the deadlines. But then you have cases like Miller, which we cite in our brief, that says it's not required. A court can retroactively extend the deadlines under the emergency orders after the fact. So in this case, the court can't tell whether because of a remand, the trial court very well might make a discretionary decision to extend the limitations or not. In any event, this court has made clear that the standard on the emergency orders on limitations of use of discretion and the court hasn't exercised, the trial court hasn't exercised its discretion. That's something that should be left to the trial court in the first instance. And then if it results in coming back there a second time, the court can act properly as a reviewing court. The third ground, I believe, involved the Texas Product Liability Act, which I think has essentially been waived. They did not reissue any arguments on that in the response brief, and it's pretty obviously not a ground that would support dismissal. The fourth ground is an argument that the vicarious liability and lost wages claims should be dismissed because they're not independent claims. We freely admit they're not independent claims. They're actually elements of the other claims, so there's nothing to dismiss. It's just a question about the alleged domain of pleading, which is under well-established precedents. Johnson, Skinner, multiple cases from this court, pleading defects in describing theories are not a basis for dismissal. Instead, this case will go forward with the damages and vicarious liability being considered as part of the claims for negligence, strict liability, etc. There's simply nothing to dismiss on that point. Finally, they make another argument on the lost wages that there's no basis for lost wages as a measure of damages for taking care of a child under Texas law. They are incorrect on that. They cite the Pressey case for the proposition that it should be the value of wages of a third-party caregiver. That's not the case. In Pressey, the court was confronted with two choices. Do we measure it by the services of the medical provider or a non-medical provider? Those were the two parties in that plaintiff and defendant presented. Pressey says nothing about whether there are other measures of actual damages. In contrast, courts throughout the country, such as the District of Columbia Circuit's opinion in Lester v. Dunn, has explained that this is a reasonable measure of damages when a family member has to take care of another family member. In fact, on reply, we realized there was a Texas Supreme Court case controlling on this. The Pullman case recognized 133 years ago that lost wages were a relevant measure of damages in this circumstance. If the court were to reach it, I think they would be wrong on that. More importantly, those just aren't issues that this instance. So, I request that the court reverse the preemption decision, the version of the case, and with instructions to proceed accordingly after. Thank you, Your Honor. If there are no further questions. Yes, you saved time. Thank you. Mr. Palmer. Good morning, Your Honor. My name is Will Palmer on behalf of the Appellee Whole Foods Bank. I will start with the preemption issue and move on to the statute of limitations issue and the remaining grounds for dismissal of time permitting. As we've been discussing, obviously the key issue in this case is whether or not the appellant's claims are preempted under the FDCA. The FDCA contains an express preemption clause in 343-1. That express preemption clause states that no state may impose a requirement for the labeling of food that is not identical to certain specified sections of the FDCA. So, in other words, not every section of the FDCA has preemptive effect. Only the sections of the FDCA listed in the express preemption clause have preemptive effect. In addition, the FDCA contains Section 337, which has been construed as providing for implied preemption. As appellants point out in their reply brief to this court on footnote 1, page 8, implied preemption under Section 337 is something of a misnomer. When we say implied preemption under Section 337, what we're really talking about is that there's no private right of action under the FDCA and that actions to enforce the FDCA must be brought by the United States. So, that's different from how we normally talk about implied preemption in the context of conflict preemption or obstacle preemption. Normally, when we talk about implied preemption, we mean that a state law impliedly conflicts with a federal statute or impliedly poses an obstacle to the achievement of federal statutory objectives. But that's not what we're talking about here. We say implied preemption under Section 337, we're really talking about there's no private right of action and only the United States can bring an action to enforce the FDCA. As appellants have discussed, as both parties discussed in their briefs, the seminal case on point here is Buckman. In that case, the plaintiff had been injured by orthopedic bone screws that had been approved by the FDA. He alleged that the FDA only approved the medical devices because the Mr. Taylor says that even assuming that Buckman applies, Hughes would still control. I'm sure you're going to address that. Yes, sir. Yes. As I was about to say, in the Hughes opinion, this court distinguished Buckman and held that Buckman dealt with a specific type of claim, a fraud on the FDA claim, and that doesn't necessarily apply to all state court claims. So, the plaintiff in Hughes had also been injured by a medical device. She had also claimed that shouldn't have been approved, but she had a failure to warn cause of action in her complaint, and the court said that that was not impliedly preempted and was distinct from a fraud on the FDA claim. So, under Section 337 and under the express preemption clause in Buckman and the Hughes opinion, appellants have a narrow path to victory, and it's described by the district court succinctly in their order granting our motion to dismiss, and I believe we're quoting both the whole foods for conduct that violates the FDCA, but not because it violates the FDCA. They have to be suing whole foods for conduct that violates the FDCA because otherwise the claims are expressly preempted, and they have to be suing whole foods for conduct, not because it violates the FDCA, but on some independent historic claim basis, because otherwise their claims are impliedly preempted under Section 337. Now, appellants have set forth the argument that Section 337 and implied preemption under Section 337 is categorically inapplicable to food claims, but we cite multiple cases where the courts apply Section 337 to food labeling claims, and I don't believe that appellants actually address those cases in their reply to this court. We first recite Batani v. Nestle Waters in that case. The plaintiff had alleged that the manufacturer was liable because their pull in spring water wasn't really spring water under the FDA regulations. Likewise, in Ingrid Trader Joe's tuna litigation, the plaintiff alleged that the canned tuna didn't weigh what they said it weighed in violation of FDA regulations. In Trisbon v. Checkers Drive and Restaurants, the plaintiff had suffered food poisoning and alleged that he alleged various state court claims, but had styled them as FDCA violations. Lastly, in Berzani v. Costco Wholesale Court, the plaintiff had alleged that Costco had failed to properly disclose the weight of the shrimp in its packaged shrimp. So in all of these cases, the courts directly applied Section 337 to find implied preemption, and while Hughes is controlling here, these cases aren't inconsistent with Hughes. All of these cases involve, do not involve, none of these cases involve fraud on the FDA claims. All of these cases involve misrepresentations directly to the consumer, and they were still held to be impliedly preempted by Section 337. But in this case, isn't his claim, as I understood it, again as pled, negligence on the part of Whole Foods in swapping labels, or somehow there's a Yes, sir. How is that preempted by someone who doesn't conform with an FDCA-required label? Yes, well, we believe that this report was right in its order when it said that although they do not outright allege this, plaintiff's claims are inherently based on the FDCA's definition of major food allergens. So if you look at their negligence claim, it says Whole Foods was negligent because it breached its duty to lawfully label food. It says that Whole Foods violated 21 section, 21 U.S.C. Section 321 QQ, which lists all the major allergens. Their negligence claim further states that Whole Foods was negligent because it failed to staff the bakery with staff members who are trained on 21 U.S.C. Section 321 QQ. So the standard for to their negligence claim, whether they say so or not. And as the court noted in Petani, there is preemption if plaintiff's true goal is to privately enforce the alleged violations of the FDCA. And as the Sixth Circuit has noted, the FDCA's public enforcement mechanism is thwarted if savvy plaintiffs can label as arriving under a state law for which there exists a private right of action, a claim that in substance seeks to enforce the FDCA. Is there a parallel, just thinking out loud, is there a parallel with, let's say, OSHA, where OSHA requires certain strips put on the floor or a certain type of spacing if someone gets injured, like a slip and fall or something like that, where OSHA regulations would preempt a claim of some type of premises liability? I'm regretfully not super knowledgeable about OSHA, but I think that I'm just looking for something, and that's the one that came to mind, something that would suggest preemption being a doctrine that is employed elsewhere on these regulatory agencies such as the FDCA. I'm sorry, Your Honor, I can't think of an analogous body of law that where it would apply. If I may, though, I wanted to address in the reply brief appellant's site two other cases that they claim stand for the proposition that Section 337 simply does not apply to labeling claims, and those cases are Holt v. Snapper Beverage Board, it's a 2009 Third Circuit case, and Cideon v. Krispy Kreme Donut, that's a case out of the Central District of California. These are cited in appellant's reply brief for the proposition that Section 337, that there is no implied preemption under Section 337 for food labeling claims. But getting back to what I was saying originally, the kind of implied preemption in both of these cases is not the kind of implied preemption we're talking about. The kind of implied preemption in both of these cases is traditional conflict preemption. So the issue there was, in Snapple, the plaintiff claimed that Snapple's all natural food label was misleading, and the court held that there is no FDA regulation on point. Compliance with both the FDA rules and state law was possible, so there was no implied conflict preemption. Likewise, in Cideon v. Krispy Kreme Donut, the plaintiff claimed that certain of the labels were misleading, and the court found the same thing. It found that compliance with FDA regulations and complying with state law was possible, and therefore there was no implied preemption. But the point is that in both of these cases, the plaintiffs aren't alleging that the defendants violated the FDCA. The plaintiffs are alleging that the defendants complied with the FDCA, but are nonetheless liable to them, which is not the kind of implied preemption, which is not the kind of preemption issue in our case. I also want to address the savings clause issue, because counsel has argued that— Yes, sir. Previously, you mentioned that the plaintiffs in their reply brief had not responded to the cases that you had cited. Yes, sir. Did I hear you correctly? Yes, sir. But I also noticed that even though they relied heavily on Hughes so heavily that it was listed as possum in their table of contents, that you did not mention Hughes in your brief. Which is a red flag to me. Understandable, your honor, and we don't, obviously we don't dispute that Hughes is controlling in this case, but— So you just didn't even mention it in your brief? I don't understand that, unless you're trying to avoid it. Well, I believe that the cases that apply 337 to food labeling claims aren't inconsistent with Hughes. Perhaps it was an oversight not to exquisitely say that in our brief, I regret that, but I don't believe that Hughes changes the analysis in these district court cases at all. If I may, regarding the savings clause issue, so appellants have argued that the savings clause stands for the proposition that section 337 doesn't apply to food labeling claims. The savings clause simply says that the express preemption clause of the FDCA should not be construed to preempt any provision of state law that's not directly listed in the express preemption clause. It also states that the express preemption clause should not be construed to preempt any area of state law involving safety warnings concerning the safety of food. We discussed the Xi Ortino decision in our brief, that's the case out of Northern District of California. And the reason we discussed that case is because it provides a very helpful discussion of the legislative history of the statute. As the Xi Ortino opinion notes, when Congress passed the express preemption clause, along with the savings clause, it issued a statement of intent. And that statement of intent was clear. It said, we don't even, this is probably not necessary to include the savings clause because the sections of the FDCA that are listed in the express preemption clause do not implicate food safety in the first place. So we're just clarifying that these sections, these specifically identified sections of the FDCA in the express preemption clause do not implicate food safety. But it certainly doesn't stand for the proposition that section 337 is inapplicable to food claims. So given that section 337 is applicable to food claims, the question is, are plaintiffs walking that narrow path to victory? Are they suing Whole Foods for conduct that violates the FDCA, but not because it violates the FDCA? And I don't think there's any question that they are arguing that Whole Foods violated the FDCA, but is there an independent state tort basis to impose liability? And we believe the district court was right in that the plaintiffs pleading simply do not allege an independent state tort basis. The common law causes of action that they insert are inextricably linked with violations of the FDCA and are I believe we've already discussed how the negligence claim is peppered with those references to the FDCA. But likewise, the products liability claim likewise says that Whole Foods unlawfully placed a product on the stream of commerce. And it also states that Whole Foods should have disclosed these allergens according to federal law. So the references to federal law are also central to their claim for products liability marketing manufacturing defect. But likewise, the claim for breach of warranty and deceptive trade practices, as the district court noted, the basis for the deception is that it didn't comply with the FDCA requirements. So for all those reasons, we believe that this court should affirm the district court's order granting Whole Foods motion to dismiss on preemption grounds. If I may, with our remaining time, I'd like to briefly discuss the remaining grounds for affirming the district court's order, at least in part. As we set forth in the lower court, plaintiffs, at least the Jeff and Debbie Spano's claims were filed well outside the limitations period. But you agree with counsel that that wouldn't end the case. Is that correct? Yes, sir. I can't argue with that. Obviously, plaintiff Minor C.S.'s claims haven't expired yet. But in any event, I don't think there's any dispute that they filed outside the limitations period. Is there a compelling reason why this panel should take up those issues before the district, assuming we agree with your opponent on the preemption issue? Is there some compelling reason why this panel should take up your other arguments prior to the district court hearing those on remand? I believe that the court's opinion in Curry v. Valentine, the per curiam petition, excuse me, per curiam opinion issued January 31st of this year. I believe Judge Spence was on that panel. That case is on all fours with this case. I mean, it could not be more similar. And actually, the facts in our case weigh even further of dismissing plaintiff's claims. In that case, there was a personal injury. They filed 21 days after the two-year limitations period had expired. They argued that the Texas Supreme Court's emergency orders automatically told the limitations period. And they didn't plead a single fact as to why they were entitled to an extension. That's the same thing here. And actually, I would argue further. They didn't argue for a discretionary extension in the trial court. They argued that the emergency orders automatically told the limitations period. So I would argue they waive the right to claim that they're entitled to a discretionary extension on appeal. But even if this court is willing to consider the argument that they should be granted a discretionary extension, there is not a single fact in this record that entitles them to it. They did not plead it, and they have not set forth any reason why they should be entitled to it. Now, plaintiff cites, excuse me, appellant cites two state court appellate cases for the proposition that they don't have to make some showing as to why they're entitled to an extension. Those cases are Ajao v. Hall and Miller v. Castleman. Both those are Texas state court appellate cases. In both cases, it involved a plaintiff missing the deadline for an expert report. But in both cases, those parties made a showing. In Ajao v. Hall, the plaintiff's specific doctors, and they told me they were unavailable because they were dealing with the COVID-19 pandemic. At Miller v. Castleman, similarly, the plaintiff's experts submitted an unsworn declaration that said, I would have prepared my report, but I was extremely sick with COVID during that time, and that's why we didn't submit it on time. So appellants cite Ajao v. Hall for the proposition that they don't have to set forth any evidence as to why they are entitled to an extension. Well, they should at least have to plead some facts. This is a hearing on a motion to dismiss, and there's not a single fact pled in the record that entitles them to a discretionary extension. So for those reasons, we believe this court should affirm the dismissal in part and dismiss Jeff and Debbie Spano from the case. With my remaining time, I'd like to address the remaining grounds for dismissal. On the issue of vicarious liability and loss of earning capacity, appellants have said before this court in their oral argument that they do not, they're not claiming those as independent causes of action, but their first amendment complaint says otherwise. And if they're conceding those aren't independent causes of action, then there's no reason not to affirm the dismissal of those purported causes of action. Also, appellants cite various authority in their brief, Johnson v. City of Shelby, Skinner v. Switzer, Stanton v. Elliott, and they cite those cases for the proposition that these are minor pleading defects that shouldn't be a bar to the case moving forward. But all of those cases are fundamentally distinguishable from this case in the following respect. In all of those cases, there was a cognizable theory of recovery. There was a cognizable cause of action. It was just pled poorly. The plaintiff was trying to assert a due process claim in 1983, and he failed to mention 1983. The plaintiff was trying to assert a due process claim and pled it poorly. Or the plaintiff was trying to assert a cause of action under West Virginia's wrongful death statute and pled it poorly. In each of those cases, there was some actual cause of action they could have pled, and they just did a bad job of pleading it. Here, there is no such thing as a cause of action of vicarious liability. There is no such thing as a cause of action for lost earning capacity. So there's no reason to sustain those causes of action. Lastly, I will just say with regard to the damages issue, we cite three cases in our brief regarding the law on what damages can be recovered for lost wages. And appellants have never responded to any of them. They didn't respond to it in the brief before this court. I don't believe they addressed it in the oral argument. And those cases are Cox v. Centerpoint, Metropolitan Life Insurance v. Haney, Border Apparel East v. Guardian. Those are all in our brief. If a plaintiff wants to recover lost wages, they have to suffer a physical injury. That's it. Now, plaintiff claims that there was this Pullman case that stands for the proposition that they can recover lost wages even if the plaintiff wasn't the one who suffered the physical injury. But the issue in Pullman was an evidentiary issue. The question was, he is claiming lost wages. So is that evidence relevant to it? It didn't directly address the question of whether this is a category of damages that should be allowed. Likewise, the Pressy case simply stands for the proposition that you should measure lost damages by the reasonable value of services provided. Well, in this case, plaintiffs are claiming that Debbie Spanner was a senior executive at a company making God knows how much money and that they should be entitled to recover all the money she would have made doing that job if she hadn't quit to take care of her son. But that's not a reasonable measure of damages. That's not a reasonable measure of the cost of what it costs to provide medical care. And so for that reason, we don't think they should be allowed to recover lost wages. Thank you, Your Honor. All right. Thank you, Mr. Palmer. Mr. Taylor for Rabeau. To sum up defendants' arguments at the risk of being overly corny, they want to have their cupcake and eat it too. They want to say that if we comply with the federal labeling provisions, then all state claims are preempted. And if we violate the state law, the federal law, then state law claims are preempted. And if we allege other types of claims that aren't covered by the federal law, then those claims are still present preempted because they're in the same pleading. That's not the law. It wasn't the law in Buckman. It wasn't the law in Hughes. It wasn't ever the law. Addressing their particular concerns, they say that Buckman is not a conflict preemption case. It instead is a different animal. I will submit that the Supreme Court of the United States disagrees. I will quote from page 348 of the Buckman opinion. After going through all the concerns of federalism and stating that since this is a purely federal issue with the FDA, fraud on the FDA claim, there's no presumption against preemption, the court then goes on and says, given this analytical framework, we hold that the plaintiff's state law fraud on the FDA claims conflict with and are therefore impliedly preempted by federal law. Buckman is a conflict preemption case. In the next four or five pages of Buckman, go on and explain why the claims were preempted because it would usurp the FDA's authority to approve medical devices. Next, I think the significant thing is that they say their various district court cases are not many of them are directly inconsistent with Hughes or they're factually distinct, but I will address one of them here to satisfy the appellant's concerns. I'll address Patain, one of the ones I believe you mentioned. It's block quoted on page 20 of the appellant's response brief. In the portion they close, this pretty well summarizes the contentions of the appellant in this case. It says, on the other hand, as interpreted by Buckman, section 337A, as interpreted by Buckman, quote, forecloses state law causes of action that are predicated on a violation of the FDCA. That's the defendant's argument that if you base your state law claims on violations of federal law, it's preempted. This court, however, disagrees. This court said the opposite in Hughes. It not only held the opposite, it said the opposite in virtually verbatim language. A quote from Hughes on page, apologies, your honor, I've got the wrong case here. In Hughes, if I am correct, y'all can check me, but I believe I'm right, that the only violations pled in that case were violations of the FDA, of the FDCA. There were other violations of vegan, or negligent manufacturing, or anything like we have in this case. Purely violations of the FDCA, and yet the court said this, to the extent that this claim is predicated, quote, predicated, the same word used in pertain, used by the appellants, predicated on Boston Scientific's failure to report serious injuries and malfunctions of the device as required by the applicable FDA regulations. I've got the wrong quote here, I apologize. That's a quote from their argument. It's the next paragraph. Assuming a failure to warn claim may be pursued under Mississippi law, as Hughes argues, it is clear that such a claim is preempted only to the extent that it purports to propose liability despite Boston Scientific's compliance with FDA regulations. Quote, to the extent that Hughes asserts a failure to warn claim based only on Boston Scientific's failure to comply with FDA regulations, however, such a claim is not expressly preempted. It goes on to say in the next section, on implied preemption, pages 775 to 777, that's where I was looking for, this refers to a parallel claim because the state law claims would impose liability for the same violations as the FDCA. It says, Hughes is asserting a Mississippi tort claim based on underlying state duty to warm out the dangers and risks of the product. She seeks to prove Boston Scientific's breach of the state duty by showing that Boston Scientific violated the FDA's MDR regulations. Because Hughes is asserting a recognized state court claim, her claim is comparable to the tort claims in Silkwood and Lohr that Buckman recognized as surviving implied preemption. It goes on to say, my time is up, your honor, but you can read the remainder of the case on pages 775 to 777. If there are no other... Yes, thank you, Mr. Taylor. Your case is under submission. Last case for today.